UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

LAWRENCE ALEXANDER ALVARADO                                                                PLAINTIFF

V.                                                                              CIVIL ACTION NO. 3:20-cv-152-FKB

MAJOR HUSTED, et al.                                                                        DEFENDANTS

**ORDER**

This case is before the Court on the Motion for Summary Judgment [69] filed by Defendants Major Jeffrey Husted, Captain Brian Watson, and SRT Detention Officers Lieutenant Ike Williams, Master Sergeant Shakeena White, Sergeant Shaqueria Branch, Deputy Cedric Shavers, Deputy William Irwin, Deputy Hunter Moore, Deputy Michael Spann, Deputy Gabrelle Gore, and Deputy Tavarius Sharp.[1]  Plaintiff Lawrence Alvarado filed a response [74] in opposition, and Defendants filed a rebuttal [76].  Having considered the matter, the Court finds that the motion [69] should be granted in part and denied in part.

**I.     Factual Background**

At the time of the incidents giving rise to this action, Plaintiff Lawrence Alvarado was a convicted and sentenced inmate in the custody of the federal Bureau of Prisons, but was being held in the Madison County Detention Center ("MCDC") for proceedings before this Court in another matter.  Plaintiff is proceeding *pro se* and *in forma pauperis*, subject to the Prison Litigation Reform Act ("PLRA").  He claims his Eighth Amendment rights against cruel and unusual punishment were violated, as well as his Fourteenth Amendment due process rights. He has brought this suit pursuant to 42 U.S.C. § 1983.

---

[1] Deputy Shavers is referenced in the Complaint [1] as "Chavis"; Deputy Irwin is referenced as "Ewin"; and in Plaintiff's earlier Inmate Request Forms, Deputy Gore is referenced as "Gordon."  *See*, for example, [1] at 1 and 5, [25] at 1, and [69-3] at 101 and 106.

1

Plaintiff's account begins on or about September 25, 2019. Plaintiff alleges that he had a verbal altercation with Deputy Gore, and minutes later, Deputies Shavers,[2] Moore, Spann, and Irwin entered his unit. [1] at 4-5; [25] at 2; [38] at 7-8. Spann, Shavers, and Irwin allegedly threatened to physically harm him. [1] at 5; [25] at 2. Plaintiff then used a kiosk to enter a complaint against "Gore (F.N.U.) [S]hav[er]s, and several other members of the SRT team"; about an hour later, he was moved to administrative confinement in the B Unit for allegedly threatening officers. [1] at 5; *see also* [25] at 2-3; [38] at 9-10.

Plaintiff claims that the next day (on or about September 26), Gore tried to give him a poisoned food tray. Specifically, he claims that on that day, Gore participated in handing out food trays, and based on Plaintiff's alleged observations of Gore, he believed that Gore was trying to give a particular tray to him. [1] at 5-6; [25] at 3; [38] at 10-14. Plaintiff states that after getting the tray, he saw "green pellets" in his food. *Id*. His attempt to speak with a shift lieutenant was denied, and a few hours later, he was moved from administrative segregation to disciplinary segregation in D Unit. [1] at 6; [25] at 3; [38] at 12-13. Afterwards, Plaintiff submitted a grievance against Gore alleging food poisoning. [25] at 3-4; *see also* [38] at 14. A hearing was held by Sergeant Branch and Officer Christina Kelly (MCDC Administrative Remedy Coordinator), and Plaintiff was given sixty days segregation with credit for time served from September 25, 2019. [1] at 6; [25] at 4. Plaintiff appealed the decision via the administrative

---

[2] Defendant Shavers is listed in Plaintiff's Complaint but not in the omnibus testimony. *Compare* [1] at 5 to [38] at 8-9. Despite this discrepancy, the Court construes Plaintiff's suit to include Shavers in this portion of his allegations. *See Eason v. Holt*, 73 F.3d 600, 602 (5th Cir. 1996) ("[A]mplifying the allegations in the prisoner's complaint, the *Spears* testimony likewise becomes a part of the total filing by the *pro se* applicant.") (footnotes omitted). Pursuant to *Eason*, in instances where Plaintiff has attempted to name groups of defendants, the Court has noted the discrepancy and treated Plaintiff's sworn testimony at the omnibus hearing as an amplification of claims made in his Complaint [1]. As a result, a defendant's acts described in the Complaint and/or in other sworn testimony, such as the omnibus hearing transcript [38] or Plaintiff's affidavit [25], have been considered by the Court.

remedy program and contends that Kelly never responded and Warden Watson's response was that MCDC was "only a holding facility for the U.S. Marshals." [1] at 6.

Plaintiff also alleges that on November 12, 2019, Major Husted and Deputy Sharp attempted to bargain with him to refrain from his civil complaint against Gore and other deputies who had allegedly threatened his safety; Plaintiff declined. [1] at 6-7; [25] at 5; [38] at 14-15. Plaintiff believes that this conversation provides evidence of a violation of his constitutional rights, as it shows Husted's and Sharp's awareness of "the situation between Deputy Gore" and himself as well as his safety concerns involving other officers. [38] at 14-15.

Plaintiff alleges Husted and Branch informed him that he would be released from segregation on November 26 (approximately sixty days after September 25). *Id.* at 15-16; [25] at 5. On November 27, after Plaintiff had been allowed out of his cell for his allotted one hour, Plaintiff asked to speak with an officer regarding why he had not yet been released from segregation. [1] at 7; [25] at 5-6; [38] at 15-17. Awaiting an answer to his question, Plaintiff did not follow Master Sergeant White's intercom orders to go back into his cell. [1] at 7; [38] at 15-17; Pl.'s Resp. [74] at 3.

According to Plaintiff, a few minutes later Defendants Irwin, Spann, Shavers, Moore, Sharp, White, Branch, and Williams came into D Unit. [1] at 7; [25] at 6; [38] at 16-17.[3] Plaintiff claims that from that point, Irwin shot him with a pepperball gun, and he was kicked and punched by Spann, Shavers, Sharp, and Moore, after he was handcuffed—all while allegedly trying to follow orders. [1] at 7-9]; [25] at 6; [38] at 17-18. Video footage shows, however, that Plaintiff

---

[3] At the omnibus hearing, Plaintiff testified that Moore, Irwin, Spann, Shavers, Williams, White, Sharp, "and several more officers" came into the area. [38] at 17:9-15. Video footage shows a total of eight officers during this time. Ex. "C" to [69] at 9:21:53 to 9:22:24. The Court notes that Sergeant Branch is specifically named in this group in the Complaint, but not in omnibus hearing testimony, and Master Sergeant White is specifically named in the omnibus testimony, but not in the section of the Complaint detailing the group of officers physically involved in the November 27 use of force. *Compare* [1] at 7 to [38] at 17:9-15. All eight officers are named in Plaintiff's Affidavit. [25] at 6.

3

was first kicked and stomped and then handcuffed. *Compare* [38] at 17-18 to Ex. "C" to [69] at 0:01:57 – 0:02:17.[4]   Plaintiff testified that after he was handcuffed, Spann, Shavers, Moore, and Sharp rammed his head into doors, walls, and poles on the walk from D Unit to the main building. [1] at 7-8; [25] at 6-7; [38] at 18-20.   For most of this walk, view of the plaintiff is obstructed on the video. *See* Ex. "D" to [69].[5]   Plaintiff alleges that under the breezeway leading from D Unit to the main building, Defendants Spann and Shavers rammed his head into a pole but "missed" "another pole" which resulted in their falling into the grass beside the breezeway, where he was punched and kicked by Spann, Moore, Irwin, Sharp, and Shavers while still handcuffed. [1] at 7-8; [25] at 6-7; [38] at 19-20; [74] at 3.[6]

After arriving in the main building, officers placed Plaintiff in a room in medical.   Plaintiff

---

[4] Where the video contradicts Plaintiff's version of the incident, the Court credits the facts evidenced on video. *Renfroe v. Parker*, 974 F.3d 594, 599 (5th Cir. 2020), cert. denied, 141 S. Ct. 2519, 209 L. Ed. 2d 551 (2021) ("[A] plaintiff's version of the facts should not be accepted for purposes of qualified immunity when it is 'blatantly contradicted' and 'utterly discredited' by video recordings.") (quoting *Hanks v. Rogers*, 853 F.3d 738, 744 (5th Cir. 2017)).   Likewise, the Court credits the facts evidenced on video, where the video contradicts Defendants' version of the incident.   For example, in Defendant Irwin's "Narrative" of a Jail Incident Report about November 27, he states:
> We opened the Unit 6 door and instructed Inmate Alvarado to get on the ground. He then took an aggressive stance with his fists balled up, as if he was going to fight us. Alvarado was then instructed multiple times by multiple officers, to get on the ground. Once Inmate Alvarado failed to do so, I fired one three shot burst with the pepperball gun at Inmate Alvarado. He continued to stand in an aggressive posture, with his fists balled. He was again instructed to get on the ground but failed to do so. I fired two more three shot bursts at Inmate Alvarado. He was then taken to the ground by multiple officers. After he was taken to the ground, he was cuffed and escorted out of Unit 6.

[69-2] at 4. However, the video does not appear to show that Plaintiff "took an aggressive stance with his fists balled up" at any time after the officers entered his unit and before they handcuffed him or that Plaintiff was given multiple opportunities to comply with the command to "get on the ground" before Irwin fired multiple pepperball shots at him. [69], Ex. "C," at 0:01:48 - 0:02:23, Ex. "D," at 0:00:07 (command to "get down") and 0:00:10 (audible pepperball gun shots).
[5] Although the video of Plaintiff is obstructed during the walk, Exhibit "D" also contains audio. And the audio evidence appears to be consistent with Plaintiff's allegations that the officers were ramming his head into doors and/or walls. At 0:00:54 on Exhibit "D," a sound of contact (which sounds consistent with Plaintiff's head striking a wall, door frame, or other solid object) can be heard, immediately followed by an exclamation of "oh, shit!" (which sounds consistent with being made by Plaintiff). The same thing occurs at 0:01:01. At 0:01:44, a contact sound and Plaintiff's exclamation appear to be consistent with the escorting officers having rammed Plaintiff's head into the door of the main building.
[6] The video evidence does not rebut Plaintiff's allegations that these officers rammed his head into a pole on the subject breezeway and ended up falling into the adjacent grass when they missed another pole. Viewing the video (coupled with the audio referenced above), one could reasonably conclude that these officers attempted to ram Plaintiff's head into a pole, missed the pole, and therefore fell into the grass next to the breezeway and in the vicinity of one of the poles. *See* [69], Ex. "D," at 0:01:04 – 0:01:16; *see also* Ex. "D," at 0:00:54, 0:01:01, and 0:01:44.

4

alleges that while he was "lean[ing] forward to breathe," Defendant Shavers "kicked" or "knee[d]" him "in the face . . . while the other Defendants watch[ed]" and that Defendants Spann, Moore, and Sharp "punch[ed] him." [74] at 3-4.[7]

After receiving treatment in medical for injuries to his face, head, chest, abdomen, back, and left elbow, officers escorted Plaintiff back to D Unit.  Plaintiff alleges that after arriving in D Unit, Defendant Moore pushed his already-injured head against the wall while other officers moved his belongings into cell D-614.[8]  [1] at 8; [25] a 7; [38] at 21-22.  Plaintiff testified that he was then escorted to cell D-614, where Spann made him strip naked and get on his knees with his head against the wall in the presence of Irwin, Williams, Shavers, and Moore.[9]  [1] at 8; [38] at 22. Plaintiff alleges that while the officers were in D-614, Spann pushed him against the wall and kicked him in the back. [1] at 8; [25] at 7.  He was then locked inside and not allowed outside the cell except for medical reasons. [1] at 8; [38] at 23.  Plaintiff alleges that he suffered a concussion and was treated on December 9, 2022, for blood in his urine caused by trauma to his kidneys. [1] at 8.

The last alleged use of excessive force occurred on December 12, 2019, when Plaintiff was on his way out of MCDC. [1] at 8-9; [38] at 23-24.  Plaintiff claims that while chained in a holding cell, Spann picked him up and pushed his head against the wall in the presence of Brian Watson

---

[7] Video evidence shows an officer, whom Plaintiff identifies as "Shavers," telling Plaintiff, who was slumped forward in a chair, to "get up" and contemporaneously knee kicking Plaintiff. [69], Ex. "D," at 0:03:54. The video also appears to show that before the knee kick, this same officer signaled the body camera officer to leave the room. *Id*. at 0:03:34. The body-camera officer does, in fact, leave the room, but later returns, after which the body camera captures this officer kicking Plaintiff. The video then appears to show Lieutenant Williams instructing Shavers to leave the medical room and grabbing Shavers's arm to escort Shavers out of the room. *Id*. at 0:04:04 – 0:04:10. Although Plaintiff did not plead specific facts about excessive force in the medical room until his response to Defendants' summary judgment motion, he has, throughout this case, asserted that these officers used excessive force against him during this time period on November 27, 2019. These facts are, therefore, part of the same transaction or occurrence at issue in this case.
[8] Video evidence of Officer Moore's pushing Plaintiff's head against the wall can be seen in Exhibit "D" to [69] at 0:16:39 – 0:18:21.
[9] The Court notes that the Complaint [1] places Shavers at this incident, but omnibus testimony does not. *Compare* [1] at 8 to [38] at 22.

and two other jail officials. [1] at 8-9; [25] at 7-8; [38] at 23-24.

The Court has liberally construed Plaintiff's complaint to raise the following claims: (1) a claim against Gore for tampering with his food in retaliation for filing a grievance; (2) claims against Spann, Moore, Shavers, Sharp, and Irwin for excessive force; (3) retaliatory assault claims against Spann, Moore, Shavers, Sharp, Irwin, and Gore; (4) claims against White, Branch, Williams, and Watson for failure to intervene during use of excessive force; (5) claims against Husted and Watson for failure to protect Plaintiff from retaliatory assaults by Spann, Moore, Shavers, Sharp, Irwin, and Gore; and (6) a claim against Watson for "violating Plaintiff[']s] rights to Due process of law when he (Brian Watson) failed to respond to Plaintiff's electronic appeal concerning Deputy Gore's attempt to poison Plaintiff."[10] [8] at 2.   While Plaintiff raised a number of additional claims in his response [74] to Defendants' summary judgment motion, those claims are not properly before the Court. *See*, *e.g.*, *Green v. JP Morgan Chase Bank, N.A.*, 562 Fed. Appx. 238, 240 (5th Cir. 2014) (quoting *De Franceschi v. BAC Home Loans Servicing*, L.P., 477 Fed. Appx. 200, 204 (5th Cir. 2012)) ("[D]istrict courts do not abuse their discretion when they disregard claims or theories of liability not present in the complaint and raised first in a motion opposing summary judgment.").

## II.   Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue of fact is genuine if the "'evidence is sufficient to permit a reasonable factfinder to return a verdict for the nonmoving party.'" *Lemoine v. New Horizons Ranch and Center*, 174 F.3d 629, 633 (5th Cir. 1999) (quoting *Colston v. Barnhart*, 146 F.3d 282, 284 (5th

---

[10] This list of claims is a modified version of the list provided by Plaintiff at the end of his Complaint. [1] at 9.

Cir.), *cert. denied*, 525 U.S. 1054, (1998)). Issues of fact are material if "a resolution of the issues might affect the outcome of the suit under governing law." *Lemoine*, 174 F.3d at 633. The Court does not, "however, in the absence of any proof, assume the nonmoving [or opposing] party could or would prove the necessary facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (emphasis omitted). Moreover, the non-moving party's burden to come forward with "specific facts showing that there is a genuine issue for trial," *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), is not satisfied by "conclusory allegations" or by "unsubstantiated assertions," or by only a "scintilla" of evidence. *Little*, 37 F.3d at 1075.

### III.     Analysis

Defendants have moved for dismissal of Plaintiff's claims based largely on qualified Immunity. The two-part test for qualified immunity is well-established: "(1) whether the plaintiff has alleged a violation of a clearly established constitutional right; and (2) if so, whether the defendant's conduct was objectively unreasonable in the light of the clearly established law at the time of the incident." *Domino v. Texas Dep't of Crim. Just.*, 239 F.3d 752, 755 (5th Cir. 2001) (quoting *Hare v. City of Corinth, Miss.,* 135 F.3d 320 (5th Cir.1998) (en banc)). "A court may consider either condition first, and if either condition does not obtain, then [the defendant] is immune." *Baldwin v. Dorsey*, 964 F.3d 320, 325 (5th Cir. 2020), cert. denied, 141 S. Ct. 1379, 209 L. Ed. 2d 123 (2021) (emphasis added) (citing *Morgan v. Swanson*, 659 F.3d 359, 385 (5th Cir. 2011) (en banc)).

As to evidence, "'[i]n qualified immunity cases,' which often involve competing versions of events, [the Court] take[s] 'the plaintiff's version of the facts,' unless that version 'is blatantly contradicted by the record, so that no reasonable jury could believe it.'" *Joseph on behalf of Est. of Joseph v. Bartlett*, 981 F.3d 319, 325 (5th Cir. 2020) (quoting *Scott v. Harris*, 550 U.S. 372,

7

378 and 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007)). The Court "draw[s] these facts from the record, prioritizing the video evidence," and "view[s] the facts and draw[s] reasonable inferences in the light most favorable to Plaintiff[]." *Id.* (citations omitted).

### A. Plaintiff's retaliation claim against Defendant Gore for food tampering

Plaintiff claims that Gore retaliated against him by tampering with his food on September 26, 2019, after he submitted a grievance on September 25, 2019, alleging that he felt threatened by her and other officers. Although participation in a prison's grievance procedure should be protected from retaliation, the alleged retaliatory act must be more than *de minimis* to rise to the level of a constitutional violation:

> A prison official may not retaliate against or harass an inmate for complaining through proper channels about a guard's misconduct. *Woods v. Smith*, 60 F.3d 1161, 1164 (5th Cir.1995). "To prevail on a claim of retaliation, a prisoner must establish (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." *McDonald v. Steward*, 132 F.3d 225, 231 (5th Cir.1998).
>
> &ast;&ast;&ast;
>
> To establish a constitutional violation, an inmate must show that he suffered a qualifying adverse retaliatory act. If the retaliation alleged by [the plaintiff] does not pass this bar, he has suffered no constitutional injury.
>
> &ast;&ast;&ast;
>
> The purpose of allowing inmate retaliation claims under § 1983 is to ensure that prisoners are not unduly discouraged from exercising constitutional rights. *See Crawford–El*, 523 U.S. at 588 n. 10, 118 S.Ct. 1584. Some acts, though maybe motivated by retaliatory intent, are so *de minimis* that they would not deter the ordinary person from further exercise of his rights. Such acts do not rise to the level of constitutional violations and cannot form the basis of a § 1983 claim.

*Morris v. Powell*, 449 F.3d 682, 684-86 (5th Cir. 2006). "Retaliation against a prisoner is actionable only if it is capable of deterring a person of ordinary firmness from further exercising his constitutional rights." *Id.* at 686.

Plaintiff alleges that Gore poisoned his food. But Plaintiff admits that he never saw Gore tamper with his food, he testified that he did not actually eat any of the food, and he has submitted

8

no evidence as to what the alleged "green pellets" actually were or that there was, in fact, any poison in the food. [38] at 13-14, 26.  Further, the undisputed evidence shows that Plaintiff was not "unduly discouraged" or in any way deterred from filing grievances, as he filed two grievances about the incident the following day and submitted numerous subsequent Inmate Request Forms referencing Gore and/or the alleged food tampering incident. *See* (Inmate Request Forms) [69-3] at 5, 21, 25, 33, 34, 60, 69, 73, 90, 91; (Inmate Request Form-grievances) [69-3] at 89, 92, 99-101.  The Court finds that Plaintiff has failed to submit sufficient evidence to support his claim and that this claim fails to rise to the level of a constitutional violation. This claim should be dismissed.

### B. Plaintiff's excessive force claims against Defendants Spann, Moore, Shavers, Sharp, and Irwin

Plaintiff alleges that he suffered the use of excessive force at MCDC on November 27, 2019, by Shavers, Moore, Spann, Sharp, and Irwin, and by Spann on December 12, 2019.  There are two video recordings of the November 27 incident: a surveillance video of the initial takedown and a body camera recording with audio that covers all time periods relevant to the November 27 incident.  *See* [69] at Ex. "C" (surveillance video) and Exhibit "D" (body camera video).  The December 12 incident was not captured on camera.

The Court is mindful that "the video depictions of events, viewed in the light most favorable to the plaintiff, should be adopted over the factual allegations in the complaint if the video 'blatantly contradict[s]' those allegations." *Harmon v. City of Arlington, Texas*, 16 F.4th 1159, 1163 (5th Cir. 2021) (footnote and citation omitted). Defendants argue that the video footage shows that they did not use excessive force on November 27.  The Court disagrees.  And the Court notes that Defendants have provided no sworn summary judgment evidence setting forth their version of the November 27 or December 12 incident.  While the Court prioritizes video footage to establish facts, for the portions of video where view of Plaintiff is obstructed, the Court

9

is left with unrebutted summary judgment evidence submitted by Plaintiff. *See*, for example, *Newman v. Guedry*, 703 F.3d 757, 762 (5th Cir. 2012) (observing that "the videotapes, which do not show [the plaintiff's] right hand at the time in question, do not contradict" the plaintiff's denial of having grabbed an officer's hand).

"'[T]he core judicial inquiry' 'whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause' is 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Bourne v. Gunnels*, 921 F.3d 484, 491 (5th Cir. 2019) (quoting *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992). "Courts analyze (1) 'the extent of [the] injury suffered,' (2) 'the need for [the] application of force,' (3) 'the relationship between that need and the amount of force used,' (4) 'the threat reasonably perceived by the responsible officials,' and (5) 'any efforts made to temper the severity of a forceful response.'" *Id.* (quoting *Hudson*, 503 U.S. at 7; citing *Baldwin v. Stalder*, 137 F.3d 836, 839 (5th Cir. 1998)). "The amount of force that is constitutionally permissible . . . must be judged by the context in which that force is deployed." *Id.* (quoting *Ikerd v. Blair*, 101 F.3d 430, 434 (5th Cir. 1996)). "Courts must 'decide excessive force claims based on the nature of the force rather than the extent of the injury.'" *Id.* (quoting *Wilkins v. Gaddy*, 559 U.S. 34 (2010) (*per curiam*)). "An inmate need not establish a 'significant injury' to pursue an excessive force claim because '[i]njury and force . . . are only imperfectly correlated, and it is the latter that ultimately counts.'" *Id.* (quoting *Wilkins*, 559 U.S. at 37-38).

Having viewed the surveillance and body camera footage, the Court finds that genuine issues of material fact exist as to whether any of these officers used excessive force during any time from their initial entry into Plaintiff's unit through their final exit of his cell on November 27, 2019, including but not limited to the time of transport to medical and in medical. "[I]t [i]s well-

established . . . that officers may not 'use gratuitous force against a prisoner who has already been subdued . . . [or] incapacitated.'" *Cowart v. Erwin*, 837 F.3d 444, 454 (5th Cir. 2016) (citations omitted). Thus, summary judgment as to Plaintiff's excessive force claims arising from the entire November 27 incident should be denied.[11]

As to the December 12 incident involving use of force by Deputy Spann, Defendant has provided no summary judgment evidence to contradict Plaintiff's allegations. Therefore, summary judgment on that claim is denied.

### C. Plaintiff's retaliation claim against Spann, Moore, Shavers, Sharp, Irwin, and Gore for the November 27 incident

Plaintiff alleges that the November 27 incident was a "retaliatory assault," presumably for filing grievances against Gore and other deputies. As stated above, "[t]o prevail on a claim of retaliation, a prisoner must establish (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." *McDonald v. Steward*, 132 F.3d 225, 231 (5th Cir. 1998). "Causation requires a showing that 'but for the retaliatory motive the complained of incident . . . would not have occurred.'" *Id.* (quoting *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir.1997)) (citation omitted).

> To assure that prisoners do not inappropriately insulate themselves from disciplinary actions by drawing the shield of retaliation around them, trial courts must carefully scrutinize these claims. To state a claim of retaliation an inmate must allege the violation of a specific constitutional right and be prepared to establish that but for the retaliatory motive the complained of incident—such as the filing of disciplinary reports as in the case at bar—would not have occurred. This places a

---

[11] Defendants allege that in light of the Fifth Circuit's ruling in *Aucoin v. Cupil*, 958 F.3d 379, 382 (5th Cir.), *cert. denied*, 141 S. Ct. 567, 208 L. Ed. 2d 183 (2020), Plaintiff's claims of excessive force on November 27 are barred by *Heck v. Humphrey*, 512 U.S. 477, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994). However, the court in *Aucoin* recognized that "*Heck* d[oes] not bar the claims for excessive force occurring after [a plaintiff] [i]s restrained," and that "[p]ut simply, there is no *Heck* bar if the alleged violation occurs 'after' the cessation of the plaintiff's misconduct that gave rise to his prior conviction." *Aucoin*, 958 F.3d at 382-83. In this case, officers were called to D Unit after Plaintiff refused to return to his cell. But questions of fact exist as to whether excessive force was used, upon the officers' initial entry into the unit through their final exit of Plaintiff's cell on November 27.

11

> significant burden on the inmate. Mere conclusionary allegations of retaliation will not withstand a summary judgment challenge. The inmate must produce direct evidence of motivation or, the more probable scenario, "allege a chronology of events from which retaliation may plausibly be inferred." Although we decline to hold as a matter of law that a legitimate prison disciplinary report is an absolute bar to a retaliation claim, the existence of same, properly viewed, is probative and potent summary judgment evidence . . . .

*Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995) (footnotes omitted).

In the case at hand, a Jail Incident Report was prepared regarding the November 27 incident and formal discipline was recommended. [69-2] at 4.  The corresponding Inmate Disciplinary Form ([69-2] at 3) indicates that disciplinary sanctions were administered.[12] However, as discussed above, there are genuine issues of material fact regarding whether the force used on Plaintiff was excessive, and Plaintiff has provided unrebutted summary judgment evidence that he was threatened with physical harm prior to November 27, which led him to file a grievance about the threat.   Therefore, in addition to genuine issues of material fact on the question of whether the force used on November 27 was excessive, there are also genuine issues of whether the degree of force used by Spann, Moore, Shavers, Sharp, and Irwin was in retaliation for Plaintiff's use of the grievance process. Summary judgment on this issue should be denied as to these defendants. Since Defendant Gore, however, was not personally involved in the November 27 incident, Plaintiff's claim against her as to this incident should be dismissed.

### D. Plaintiff's bystander claims against Defendants White, Branch, Williams, and Watson

Plaintiff asserts a claim for bystander liability against White, Branch, and Williams for failure to intervene during allegedly excessive uses of force on November 27.   The standard for an officer's bystander liability is as follows:

---

[12] Defendants argue that Plaintiff pled guilty regarding the November 27 incident. But Plaintiff has argued that his signature on the report ([69-2] at 3) is forged, and it is unclear whether Plaintiff's December 2, 2019 letter ([69-2] at 6) to Husted is in response to the November 27 incident. *Compare* Defs.' Mem. [70] at 9 to Pl.'s Resp. [74] at 6.

>An officer is liable for failure to intervene when that officer: (1) knew a fellow officer was violating an individual's constitutional rights, (2) was present at the scene of the constitutional violation, (3) had a reasonable opportunity to prevent the harm but nevertheless, (4) chose not to act. Bystander liability requires more than mere presence in the vicinity of the violation; "we also consider whether an officer 'acquiesced in' the alleged constitutional violation."

*Joseph on behalf of Est. of Joseph v. Bartlett*, 981 F.3d 319, 343 (5th Cir. 2020) (footnotes omitted). Based on review of video footage, the Court finds that genuine issues of material fact exist on the bystander liability issue as to White, Branch, or Williams arising from the November 27 incident. Therefore, Defendants' summary judgment motion is denied as to Plaintiff's bystander claims against them.

As to the December 12 incident, Plaintiff does not indicate in his version of the incident that there was any time for Watson to intervene and prevent Spann's alleged act of picking him up, pushing his head against the wall, and putting him back down. [1] at 8-9; [38] at 23-24. Therefore, Plaintiff's bystander claims against Watson should be dismissed.

**E. Plaintiff's failure to protect claims against Husted and Watson**

It is well-established that "prison officials have a duty to protect prisoners from violence at the hands of other prisoners" but that "[a] prison official may be held liable under the Eighth Amendment only if he 'ha[s] a sufficiently culpable state of mind, which, in prison-conditions cases, is one of 'deliberate indifference' to inmate health or safety.'" *Torres v. Livingston*, 972 F.3d 660, 662 (5th Cir. 2020), cert. denied, 141 S. Ct. 1699, 209 L. Ed. 2d 471 (2021), reh'g denied, 141 S. Ct. 2750, 210 L. Ed. 2d 900 (2021) (citations omitted). Moreover,

>"[d]eliberate indifference is an extremely high standard to meet. A prison official displays deliberate indifference only if he (1) knows that inmates face a substantial risk of serious bodily harm and (2) disregards that risk by failing to take reasonable measures to abate it." *Taylor v. Stevens*, 946 F.3d 211, 221 (5th Cir. 2019). "Deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." *Williams v. Banks*, 956 F.3d 808, 811 (5th Cir. 2020) (brackets omitted).

13

*Torres*, 972 F.3d at 663.

Plaintiff does not, however, assert a claim of failure to protect from other inmates, but rather an alleged failure to protect him from the officers involved in the incidents on November 27 and December 12. Plaintiff has failed to present evidence of a physical altercation with any of these officers prior to November 27. He was placed in administrative segregation in B Unit and then disciplinary segregation in D Unit, after which Plaintiff's primary complaints of physical interaction with the deputies are the November 27 incident (which began in response to a disciplinary issue initiated by Plaintiff's conduct in refusing to return to his cell) and the December 12 incident while leaving MCDC. Additionally, on December 12, Plaintiff was not left alone with Officer Spann—three other officers, including Watson himself, were present.

The Court finds that Plaintiff has failed to show that Husted and Watson were deliberately indifferent to his health or safety. Accordingly, this claim should be dismissed.

### F. Plaintiff's due process claim against Watson for failing respond to his appeal regarding Gore's alleged food tampering

Plaintiff's complaint against Watson for denial of due process by declining to respond to his appeal regarding Gore's alleged food tampering is meritless, since he has no "federally protected liberty interest in having these grievances resolved to his satisfaction." *Geiger v. Jowers*, 404 F.3d 371, 374 (5th Cir. 2005); *see also Guillory v. Hodge*, Civil Action No. 2:14-cv-156-MTP, 2015 WL 1968636, at *1 (S.D. Miss. Apr. 30, 2015). Accordingly, summary judgment should be granted as to this claim.

### IV. Conclusion

For the foregoing reasons, Defendants' summary judgment motion [69] is hereby granted in part and denied in part.

IT IS ORDERED AND ADJUDGED that

1. Summary Judgment is denied as to the following claims:

   a. Plaintiff's excessive force claims against Defendants Spann, Moore, Shavers, Sharp, and Irwin regarding the entire November 27 incident;

   b. Plaintiff's excessive force claims against Defendant Spann for the December 12 incident;

   c. Plaintiff's retaliation claim against Defendants Spann, Moore, Shavers, Sharp, and Irwin for the November 27 incident; and

   d. Plaintiff's bystander claims against Defendants White, Branch, and Williams for failure to intervene in the November 27 incident.

1. All other claims by Plaintiff are hereby dismissed with prejudice. Accordingly, Defendants Husted, Watson, and Gore are dismissed.

IT IS FURTHER ORDERED AND ADJUDGED that this matter is set for a pretrial conference on October 24, 2022, at 2:00 p.m., before Magistrate Judge F. Keith Ball in Courtroom 5D of the Thad Cochran United States Courthouse, 501 E. Court Street, Jackson, Mississippi 39201.

SO ORDERED, this the 30th day of September, 2022.

                                      /s/ F. Keith Ball
                                      UNITED STATES MAGISTRATE JUDGE